NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

06-3047

JAY B. SILVERSTEIN,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED: April 10, 2006

_____

Before LINN, DYK, and PROST, Circuit Judges.

PER CURIAM.

Jay B. Silverstein seeks review of the decision of the Merit Systems Protection Board ("Board"), upholding the Office of Personnel Management's ("OPM") determination that Silverstein's disability retirement annuity should have been terminated on June 30, 2000, and that Silverstein owed OPM $18,112.00 in overpayments. We affirm.

## BACKGROUND

Disability retirement is available to certain civilian service employees. 5 U.S.C. § 8337 (2000). However, under 5 U.S.C. § 8337(d), if an annuitant receiving disability retirement is restored to "earning capacity" before the age of 60, then the annuity payment terminates 180 days after the end of the calendar year in which earning capacity was restored. "Earning capacity is deemed restored if in any calendar year the income of the annuitant from wages or self-employment or both equals at least 80

percent of the current rate of pay of the position occupied immediately before retirement." Id.

On October 20, 1979, Silverstein retired from his position of Distribution Clerk with the United States Postal Service and received a disability retirement annuity until November 30, 2001. On August 10, 2004, OPM determined that Silverstein had been restored to earning capacity in 1999, because Silverstein reported wage earnings of $41,948.00 on his 1999 federal income tax forms. The rate of pay for a Distribution Clerk in 1999 was $38,614.00. Thus, Silverstein's wage income in 1999 exceeded "80 percent of the [ ] rate of pay of the position [he] occupied immediately before retirement." 5 U.S.C. § 8337(d). OPM determined that Silverstein had been ineligible to receive the annuity from July 1, 2000 through November 30, 2001 and that he was overpaid $18,112.00 annuity benefits during that time.

Silverstein appealed to the Board, arguing that although he reported wage earnings of $41,948.00, he also reported loses of $34,868.16 from self employment expenses in 1999. Thus, Silverstein asserted that his business losses should have been subtracted from his wage income, resulting in a total income of approximately $7,080.00.

In an initial decision, the Administrative Judge ("AJ") affirmed the OPM. The full Board denied review. This petition for review followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

Our review of disability determinations under the Civil Service Retirement System is limited to determining whether "there has been a substantial departure from important

06-3047                                                    2

procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative process." Lindahl v. Office of Pers. Mgmt., 470 U.S. 768, 791 (1985) (internal quotation marks omitted).

I

Silverstein argues that OPM should have subtracted his self employment expenses from his wage earnings when determining his "earning capacity." However, OPM's regulations clearly state that for the purposes of determining "earning capacity," "[i]ncome earned as wages is not reduced by a net loss from self-employment." 5 C.F.R. § 831.1209(c)(2) (2004).

We approved OPM's approach in Balick v. Office of Personnel Management, 85 F.3d 586 (Fed. Cir. 1996). In Balick, the petitioner received both wages and commissions while receiving a disability annuity. Id. at 587. OPM determined the petitioner's "earning capacity" under 5 U.S.C. § 8337 by including the entire amount of his wages without deducting business expenses incurred in generating commissions related to petitioner's business. Id. at 588. On appeal, this court found that "[t]here is no explicit statutory definition of 'income . . . from wages or self-employment' in section 8337." Id. at 589 (ellipses in original). Given the ambiguity, we concluded that OPM's interpretation of what "wages" included under 5 U.S.C. § 8337 was reasonable and entitled to deference.

Silverstein attempts to distinguish Balick by arguing that Balick was based on Internal Revenue Code provisions pertaining to business expenses as opposed to business losses. On the contrary, in Balick we held that OPM was not required to rely on the "taxable income" figure used for federal income tax purposes when determining

"earning capacity." 85 F.3d at 588-89. Balick explicitly permits OPM to treat income from wages as separate and distinct from income from self employment. Losses from the latter cannot offset income from the former. We see no meaningful distinction between Balick and this case and therefore affirm the Board's decision in this respect.

II

On appeal, Silverstein also argues that the AJ improperly permitted OPM to submit an exhibit after the telephonic hearing, thereby denying Silverstein his right to cross-examine OPM on the contents of this exhibit.

Prior to the hearing, OPM submitted a letter to the AJ indicating that it had incorrectly calculated Silverstein's annuity overpayment as $18,112.00, when it should have been $18,102.00. After the hearing and at the AJ's request, OPM made a second submission, indicating that its initial calculation of $18,112.00 had been correct all along. While it is true that this second submission occurred after the telephonic hearing, Silverstein was copied on the submission, and Silverstein has failed to establish that any error in considering it was harmful. See Guise v. Dep't of Justice, 330 F.3d 1376, 1381-82 (Fed. Cir. 2003). Silverstein does not, for example, contend that OPM's recalculation was incorrect. Therefore, we find no reason to disturb the Board's decision.

For the foregoing reasons, the Board's decision is affirmed.

No costs.